## C. A. JONES, d.b.a. NORTHWOODS PRESS, v. AL MONICO AND OTHERS.

150 N. W. (2d) 213.

April 21, 1967—No. 40,180.

*C. A. Jones,* pro se, and *Lynn S. Castner,* for appellant.
*Powell & Dessert* and *Edward E. Dessert,* for respondents.

PER CURIAM.

This is an appeal from a summary judgment dismissing plaintiff's action for damages to his personal and business reputation and for loss of income. Plaintiff, C. A. Jones, owner of the Northwoods Press, a weekly newspaper, by his complaint charged members of the Hubbard County Board of County Commissioners with nonfeasance in public office and with defamation of his personal and business reputation. The trial court granted summary judgment for defendants after hearing on pleadings, affidavits, and depositions.

It appears from the record that plaintiff began publishing the Northwoods Press at the village of Nevis in Hubbard County in December 1960. During the operation of this business, plaintiff lived in New London, Minnesota, where he was engaged in the practice of law and helped his son-in-law with publication of a newspaper there. He appears to have spent half of his time in New London and half in Nevis. Plaintiff had part-time help at Nevis in getting out the paper and in doing job or commercial printing.

The alleged wrongful conduct of defendants arose during proceedings in which the Board of County Commissioners, which early in 1964 had refused plaintiff's bid to publish the Hubbard County financial statement disallowed a bill submitted by him subsequently for its publication.

Minn. St. 331.02 governs the printing of legal notices by qualified newspapers. Section 375.17 relates to the publication of the annual financial statement. It provides that the statement shall be approved by the attorney general and the state printer and thereafter published for "one issue in some newspaper within the county, which newspaper must be a duly qualified legal newspaper, as provided by law." The statute further provides that in addition there shall be a second publication "in one other newspaper of the county," if there be one located in a different municipality than the one in which the official newspaper is published. The official newspaper of Hubbard County is the Park Rapids Enterprise, which is established and regularly published in Park Rapids, Minnesota. Plaintiff asserts that the newspaper he has established in the village of Nevis qualifies as an "other newspaper" within the meaning of § 375.17.

In 1962 and 1963, the Northwoods Press, being the only "other newspaper" in the county, made and was paid for the second publication, although in 1963 one board member, defendant Al Monico, opposed the publication by plaintiff. The record would indicate a probable basis for the claim that the Northwoods Press was not qualified as a legal newspaper since nowhere was it established that it had a minimum of 240 paid subscribers, as provided by § 331.02, subd. 2. Plaintiff contends that he submitted such a list to the probate court.

No list was submitted to the county auditor or to the Board of County Commissioners, nor was a list of paid subscribers introduced in evidence.

It appears that in 1964 defendant Monico had won over a majority of the board to his point of view, as a result of which plaintiff's application to publish the financial statement was rejected. Apparently assuming that because of the "other newspaper" requirement his rights to remuneration for the second publication would be protected by statute, plaintiff went ahead and printed the financial statement for the year 1964.

The manner in which the Northwoods Press had published and circulated the financial statement was questioned by the board. The financial statement was not printed by the Northwoods Press. It was the practice of plaintiff to have the Park Rapids Enterprise run off extra copies of the financial statement and then to insert those copies in the Northwoods Press. For this service, Northwoods Press paid to Park Rapids Enterprise approximately $125 for each year. In 1963 the county paid plaintiff $903.25 for the publication and in 1964 a bill in the sum of $923.25 was presented. The board estimated that it was costing the county $2 per copy to send financial statements to the limited number of Hubbard County people who received the Northwoods Press publication.

It is in the context of the foregoing facts that the alleged defamatory statements are claimed to have been made by County Commissioner Monico. The supplemental complaint alleges that, in the presence and hearing of others, Monico said:

"You are supposedly by law supposed to have a second publication which is absolutely wasteful as far as the County money is concerned. There are very few people getting that paper. We have turned it down twice. I opposed it last year but it went through anyway. The Enterprise, the way it was last year, did all the work and they agreed to charge this gentleman about 80 bucks for it. He in turn collected around $800.00 of your money for no reason. * * * He will have to take this to court to collect. Let him take us to court and maybe this group can do something about getting that thing taken off the

books. It is an absolute waste of money. It is only one individual and helps this one guy. * * * We are absolutely throwing money away— throwing money away. We paid exactly the same to him as we paid to the Enterprise for their publication. Very few people get the paper. If he takes it to court, he will probably win it, but at least he's got to take it to court." [1]

In considering plaintiff's charge that the statement was so slanderous as to impute to plaintiff dishonesty or lack of integrity which might damage him in his business or professional life, it should be kept in mind that the language used will be construed as it is ordinarily understood. Words are to be given their obvious and natural meaning unless they are alleged to have been used and understood in a different sense. The question always is how would ordinary men naturally understand the language. Applying this criterion, we think it may safely be said that the words used were not purely defamatory on their face. Moreover, because of the context of the proceedings in which the words were spoken, we are not required to concern ourselves with speculation as to whether they are reasonably susceptible of a defamatory meaning. Even assuming the unlikely chance that they were inferentially defamatory, they are not actionable because of their privileged character. 11 Dunnell, Dig. (3 ed.) §§ 5510, 5523.

The authorities seem to generally agree that statements made in the course of legislative proceedings, including those made by members of municipal councils or other governing bodies of political subdivisions, are privileged. This privilege applies if it relates to a matter within the scope of that particular body's authority. It was said in Peterson v. Steenerson, 113 Minn. 87, 89, 129 N. W. 147, 31 L. R. A. (N. S.) 674:

"It is a rule of general application in this country that libelous or

---

[1] The complaint also alleges that sometime in January 1964 Monico stated in the presence of others: "That old guy over at Nevis doesn't have any paid subscribers, he just sits there and sends it out." Plaintiff, who is 81 years of age, agrees in his deposition that he did not hear this statement made, that he does not know to whom it was made, and that his information with reference to it is derived from hearsay.

slanderous matter published in the due course of judicial or legislative proceedings is absolutely privileged, and will not support an action, although made maliciously and with knowledge of its falsity, if pertinent or relevant to the issues in litigation or matter under inquiry. 25 Cyc. 376; Sheppard v. Bryant, 191 Mass. 591, 78 N. E. 394, 6 Am. & Eng. Ann. Cas. 802. The rule is broad and comprehensive, including within its scope all proceedings of a judicial nature, whether pending in some court of justice, or other tribunal, or officer clothed with judicial or quasi judicial powers, and all legislative bodies, state or municipal. In cases of other publications of libelous or slanderous matter, there may be a qualified privilege, depending upon the nature of the publication and its purpose, and the occasion of its publication. Within this class come communications * * * by a public officer in the discharge of his official duties."

Our authorities have also discussed the "qualified privilege" of the public official as one made in the course of official proceedings in good faith and without malice and relating to a matter in reference to which the particular member, or particular body, has a duty to speak, publish, act, or investigate, providing it is pertinent to the matter pending before that body. The qualified privilege may be lost by proof of malice in the publication. Peterson v. Steenerson, *supra;* 11 Dunnell, Dig. (3 ed.) § 5523; Trebby v. Transcript Pub. Co. 74 Minn. 84, 76 N. W. 961; Annotation, 40 A. L. R. (2d) 941, 943.

It seems to be well recognized, however, that the proceedings of subordinate bodies, including municipal councils or town meetings, are not within the policy underlying absolute immunity since the members of such bodies are sufficiently protected by exemption from liability in the exercise of good faith.[2] No privilege attaches to publication of a public officer's unfounded and baseless suspicions which have arisen without proper investigation. This principle was applied in Burch v. Bernard, 107 Minn. 210, 120 N. W. 33, an action against a councilman for stating that plaintiff, who had presented a bill to the council for nursing services, had participated in running a house of ill fame,

---

[2] Prosser, Torts (3 ed.) § 109, p. 801.

wherein the court stated that, concededly, such a statement was not privileged. See, also, Wilcox v. Moore, 69 Minn. 49, 71 N. W. 917; Trebby v. Transcript Pub. Co. *supra.*

We agree with the trial court on the basis of the pleadings and depositions, together with the affidavits, that there is no genuine issue as to any material fact on the question of either nonfeasance or defamation. It is apparent that the statement objected to was not prompted by a malicious motive. The statement was made by defendant Monico in his capacity as a member of the Board of County Commissioners and was a statement which one might expect from a commissioner who questioned the amount or validity of a bill submitted for approval. A county commissioner should not be exposed to the risk of damages for slander growing out of a good-faith expression of views in the course of a business session of that body which relates to a subject properly before the members. If the county commissioner is to function as a competent public servant, he should have the right to freely express his views on official business.

Plaintiff's assertion that defendants' conduct amounted to nonfeasance in office is utterly without substance and does not require discussion.

Affirmed.