Thomas H. JOHNSON, M.D., Thomas H. Johnson, III, Respondents,

v.

NORTHSIDE RESIDENTS REDEVELOPMENT COUNCIL, Defendant,

Van F. White, et al., Appellants.

No. C1-90-2115.

Court of Appeals of Minnesota.

April 9, 1991.

Kay Nord Hunt, James M. Lockhart, Lommen, Nelson, Cole & Stageberg, Minneapolis, for respondents.

Robert J. Alfton, Minneapolis City Atty., Jerome F. Fitzgerald, Asst. City Atty., Minneapolis, for defendant and appellants.

Considered and decided by CRIPPEN, P.J., and LANSING and PETERSON, JJ.

## OPINION

CRIPPEN, Judge.

The trial court denied summary judgment motions by appellant Van F. White and the City of Minneapolis. White claimed official immunity and the city claimed statutory immunity. Interlocutory appeal was taken pursuant to *Anderson v. City of Hopkins*, 393 N.W.2d 363 (Minn. 1986). We affirm denial of the City of Minneapolis's alleged statutory immunity and conclude denial of Van White's motion is not presently appealable.

## FACTS

Respondents Thomas H. Johnson, M.D. and his son Thomas H. Johnson, III decided to sell land and buildings they had used to operate the Plymouth Avenue Medical Center in Minneapolis. Ferris Alexander, a proprietor of adult book and entertainment stores, expressed an interest in purchasing the property.

A neighborhood group became aware of Alexander's interest and began a campaign to block a sale to him. Among other tactics used to this end, the group suggested concerned citizens phone and write their district councilperson, appellant Van F. White.

In response to citizens' complaints, White sent a letter dated February 2, 1988, to approximately 1500 households. That letter reads in relevant part:

> You have probably heard by now that properties at 2215 Plymouth Avenue North, 1256 Queen Avenue North and 1246 Queen Avenue North—all properties owned by the "esteemed" Dr. Thomas H. Johnson—are being considered for purchase by Ferris Alexander.
>
> \*   \*   \*   \*   \*   \*
>
> Given my past record of *FIGHTING PORNOGRAPHY* in all its forms, the community can rest assured that I will continue to be ever vigilant in my opposition to people like Ferris Alexander and Dr. Thomas H. Johnson and his son.

(Emphasis in original.) The letter was signed by White and sent on his city council stationery.

Dr. Johnson and his son sued White and the City of Minneapolis for defamation. White and the City moved for summary judgment on various theories of immunity. All motions were denied.

## ISSUES

1. Can this court conduct interlocutory review on the claim of common law official immunity by an inferior state officer sued for defamation?

2. Is the City of Minneapolis immune from suit for defamation pursuant to Minn. Stat. § 466.03, subd. 8?

## ANALYSIS

■ 1. Van White seeks interlocutory review of the trial court's denial of his motion for summary judgment. In *Anderson v. City of Hopkins*, the Minnesota Supreme Court allowed interlocutory appeal on a claim of municipal immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *Anderson*, 393 N.W.2d at 364. The court concluded this immunity claim was analogous to an immunity plea of the United States Attorney General reviewed in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). *Anderson*, 393 N.W.2d at 364. The *Mitchell* Court conducted interlocutory review after determining the trial court had rejected a claim of immunity from suit, not a mere immunity defense, so that the value of the claim would be effectively lost if the case were erroneously permitted to go to trial. *Mitchell*, 472 U.S. at 525–30, 105 S.Ct. at 2815–17.

Councilman White appeals the denial of his summary judgment on several bases. First, he sees merit in a claim of *Harlow v. Fitzgerald* immunity. This qualified immunity, however, applies only to actions commenced under 42 U.S.C. § 1983 (1988). Respondents have brought only a state claim for defamation. The Minnesota Supreme Court clearly has rejected application of *Harlow v. Fitzgerald* immunity to state tort claims, but in so doing has reasserted the vitality of the common law of official immunity in this state. *Elwood v. County of Rice*, 423 N.W.2d 671, 676–77 (Minn. 1988).

White also claims he is entitled to official immunity. The *Elwood* decision discusses official immunity based on Restatement (Second) of Torts § 895D (1977). *Elwood*, 423 N.W.2d at 678. This section of the Restatement draws a distinction between privileges and immunities as they relate to various torts. Specifically, it notes the law of privilege is properly applicable to claims of defamation committed by a public official. Restatement (Second) of Torts § 895D comment e (1977).

Absolute privileges provide immunity from defamation suits. This form of privilege includes the absolute privilege afforded legislators.

> A member of the Congress of the United States or of a State or local legislative body is absolutely privileged to publish defamatory matter concerning another in the performance of his legislative functions.

Restatement (Second) of Torts § 590 (1977). This privilege stems from the federal constitutional provision which protects speech or debate in the halls of Congress. *Id.* comment a; *see* U.S. Const. art. I, § 6. However, as noted in comment c of this section, a number of states do not extend the absolute privilege to members of subordinate legislative bodies. The privileges afforded these public officers are set forth in Restatement (Second) of Torts § 598A (1977).

> An occasion makes a publication conditionally privileged if an inferior administrative officer of a state or any of its subdivisions who is not entitled to an absolute privilege makes a defamatory communication required or permitted in the performance of his official duties.

Minnesota is among the jurisdictions applying this conditional privilege to city council members.

> It seems to be well recognized, however, that the proceedings of subordinate bodies, including municipal councils or town meetings, are not within the policy underlying absolute immunity since the members of such bodies are sufficiently protected by exemption from liability in the exercise of good faith.

*Jones v. Monico*, 276 Minn. 371, 375, 150 N.W.2d 213, 216 (1967).

■ Qualified privileges do not act as an immunity from suit, but rather as an immunity from liability for damages. A qualified privilege provides a defense to suit rather than the immunity from suit afforded by absolute privilege. *See Bego v. Gordon*, 407 N.W.2d 801, 812 (S.D.1987) (question of whether public official abused qualified privilege not appropriate for summary disposition).

Further, a qualified or conditional privilege may be defeated by a showing of common law malice. This introduces a subjective element into the trial court's determination of a motion for summary judgment, raising the question whether the statement was made "from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 257 (Minn.1980) (quoting *McKenzie v. William J. Burns Int'l Detective Agency, Inc.*, 149 Minn. 311, 312, 183 N.W. 516, 517 (1921)). This issue is one normally resolved by the jury. *Stuempges*, 297 N.W.2d at 257 (citing W. Prosser, *Handbook of the Law of Torts* § 115 at 796 (4th ed. 1971)). This subjective element renders the conditional privileges available to appellant White inherently different from the immunity provided under *Harlow v. Fitzgerald*, which has been "purged * * * of its subjective components." *Mitchell*, 472 U.S. at 517, 105 S.Ct. at 2810. Although the *Anderson* court found *Harlow* immunity "analogous" to the claim reviewed in *Mitchell*, *see Anderson*, 393 N.W.2d at 364, common law official immunity provides only a qualified privilege in defamation cases, and thus is dissimilar.

Even under general principles of official immunity, absent reference to privileges recognized in defamation cases, we would reach the same conclusion. Official immunity, as it is understood in this state, requires determination of the same subjective element considered in qualified privilege. It is settled law in Minnesota that a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong. *Susla v. State*, 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976) (pre-Tort Claims Act case). Thus, this immunity is subject to a factual condition of malice, which is generally a jury question. *See Erickson v. County of Clay*, 451 N.W.2d 666, 669 (Minn.App.1990) (only claim of absolute prosecutorial immunity amenable to interlocutory appeal under *Anderson v. City of Hopkins* ); Restatement (Second) of Torts § 895D comment c (the limited immunity of legislative officials usually may not extend to improper motive).

Having in mind the rationale against interlocutory appeal,[1] and the rubric of *Anderson*, we conclude the privileges or immunities available to appellant White operate as defenses or immunities from liability and are not reviewable upon denial of a summary judgment.

2. The City of Minneapolis claims immunity from suit under Minn.Stat. § 466.03 (1988), which provides in part:

> Subdivision 1. Scope. Section 466.02 [subjecting municipalities to tort liability] does not apply to any claim enumerated in this section. As to any such claim every municipality shall be liable only in accordance with the applicable statute and where there is no such statute, every municipality shall be immune from liability.
>
> *    *    *    *    *    *
>
> Subd. 8. Any claim for a loss other than injury to or loss of property or personal injury or death.

---

1. The briefing of this case bears ample witness to the dangers of loosely expanding the opportunity for interlocutory appeal. The parties have extensively briefed constitutional defenses to defamation actions that were determined inapplicable by the district court. These issues clearly do not involve immunity and should not be reviewed in this procedural posture.

The interlocutory re-examination of every issue involved in any motion for summary judgment premised in part on an immunity defense would raise the question of why the motions are brought in the first instance before the trial court. It renders the work of trial courts superfluous and suggests primary jurisdiction in this court over claims against public officials. This is an imprudent waste of judicial resources.

More importantly, interlocutory appeals can increase intolerably the demands of litigation on the parties. Claims may be defeated by process rather than on the merits. During the delay caused by interlocutory appeal, evidence grows stale and budgets are strained. This runs directly counter to the stated goals of the conduct of civil actions in this state to "secure the just, speedy, and inexpensive determination of every action." Minn.R.Civ.P. 1.

The City argues defamation does not fall within the legislature's intended class of torts spared from a declaration of immunity, and specifically that it is not a "personal injury" claim.

As appellant points out, Minn.Stat. § 466.03 was amended in 1986 to include the "personal injury" liability allowance provision of subdivision 8. 1986 Minn. Laws ch. 455, § 67. Although the timing of this amendment may imply refutation of this court's decision in *Bird v. State, Dep't of Pub. Safety*, 375 N.W.2d 36, 41–42 (Minn.App.1985), which holds state agency employees subject to defamation suits, we do not believe the legislature clearly intended such a repudiation. If the legislature was so inclined to declare immunity in all defamation cases, a more definite statement would be expected. License for claims of "personal injury" is an unlikely vehicle to exclude defamation from statutory immunity.

> [Personal injury] is chiefly used in this connection with actions of tort for negligence and under worker's compensation statutes. But the term is also used (chiefly in statutes) in a much wider sense, and as including any injury which is an invasion of personal rights, and in this signification it may include such injuries to the person as libel or slander, criminal conversation, malicious prosecution, false imprisonment and mental suffering.

Black's Law Dictionary 707 (5th ed. 1979).

This court recently has reiterated that a reasonable definition of personal injury includes defamation type torts. *Hamlin v. Western Nat'l Mut. Ins. Co.*, 461 N.W.2d 395, 398 (Minn.App.1990). Absent a clear statement to the contrary by either the legislature or our supreme court, we decline to alter this interpretation in the immunity context.

## DECISION

The district court's denial of a motion for extension of official immunity or qualified privilege from suit for defamation by a city councilperson is not appealable. The trial court correctly determined the City is not immune from suit for defamation.

Affirmed.