Louis **MASONICK, et al., Respondents,**

v.

**J.P. HOMES, INC., Respondent,**

**City of Lino Lakes, Appellant.**

**FIRESIDE CORNER, INC., defendant and third-party plaintiff, Respondent,**

v.

**STONEHILL ENTERPRISES, LTD., Third–Party Defendant.**

No. C4–92–1254.

Court of Appeals of Minnesota.

Jan. 26, 1993.

Philip W. Getts, Cosgrove, Flynn, Gaskins & O'Connor, Minneapolis, for Louis Masonick, et al.

Kenneth Gleason, Victor E. Lund, Mahoney, Dougherty & Mahoney, Minneapolis, for J.P. Homes, Inc.

Thomas L. Grundhoefer, St. Paul, for City of Lino Lakes.

James C. Erickson, Caroline Bell Beckman Peterson, Bell, Converse & Jensen, Roseville, for Fireside Corner, Inc.

Considered and decided by FORSBERG, P.J., and DAVIES and FLEMING, JJ.

## OPINION

WILLIAM J. FLEMING, Judge.*

Louis and Rosemary Masonick sued appellant City of Lino Lakes, respondent J.P. Homes, Inc., and respondent Fireside Corner, Inc. seeking recovery for fire damage to their newly-constructed home. The City of Lino Lakes moved for summary judgment on two theories: (1) discretionary act immunity pursuant to Minn.Stat. § 466.03, subd. 6; and (2) no private duty. The trial court denied the City's motion, and it appealed. We reverse on the issue of discretionary immunity.

## FACTS

In July 1989, respondents Louis and Rosemary Masonick hired J.P. Homes, Inc. to build a custom-designed house for them in Lino Lakes. On January 30, 1990, subcontractor Fireside Corner, Inc. installed the fireplace. Because the final siding material had not yet been applied to the house, the subcontractor was unable to complete the installation of the chimney flue. As of January 30, the metal flue pipe ended about three feet below the top of the wooden chase.

On January 31, 1990, the Lino Lakes building inspector inspected the house to determine if it met the building code and other applicable ordinances. Despite the lack of siding and the incomplete chimney flue, the inspector issued a certificate of occupancy for the house on February 9, 1990.

Shortly after the certificate of occupancy was issued, the Masonicks moved into the house. Believing that the fireplace was complete and safe to use, the Masonicks used it on three occasions during the month of February. On the evening of February 26, 1990, embers from a fire in the fireplace ignited the wooden chase above the metal flue pipe. The fire spread to the attic of the house. Although the initial fire was extinguished by the local fire department, at some point during the night the embers rekindled. The second fire resulted in damage to the home in excess of $200,-000.

The Masonicks commenced a negligence action against appellant City of Lino Lakes ("City"), among others, seeking to recover damages for the loss caused by the fire. The Masonicks alleged that the builder, J.P. Homes, Inc., and the fireplace subcontractor, Fireside Corner, Inc., were negligent in their construction of the house and that they failed to warn of the dangers posed by the incomplete chimney. The Masonicks also alleged that the City's building inspector was negligent in his post-construction inspection of the house and that he negligently issued a certificate of occupancy.

The City moved for summary judgment on two theories. First, the City argued that the issuance of a certificate of occupancy is a discretionary act for which it is immune from liability pursuant to Minn. Stat. § 466.03, subd. 6. Second, the City argued that it could not be held liable under a negligence theory because its duty to the Masonicks was public, not private.

The trial court denied the City's motion, holding that the issuance of a certificate of occupancy was not a discretionary act entitled to immunity under Minn.Stat. § 466.03, subd. 6. The trial court also held that there was a material fact issue which precluded summary judgment on the public/private duty issue. This appeal followed.

---

\* Retired judge of the district court, serving as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## ISSUES

1. Did the trial court err in denying the City's motion for summary judgment on the grounds that the issuance of a certificate of occupancy is not a discretionary act entitled to immunity under Minn.Stat. § 466.03, subd. 6?

2. Did the trial court err in determining a genuine issue of fact exists as to whether the duty owed to the Masonicks by the City was public or private in nature?

## ANALYSIS

### 1. *Discretionary Immunity.*

■ "Whether the acts of [a city's] employees are a discretionary function is a legal question." *Snyder v. City of Minneapolis,* 441 N.W.2d 781, 786 (Minn.1989). This court is not bound by the trial court's determination of a purely legal question. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). On review, this court shall "conduct an independent review of the record in light of the relevant law" in order to ascertain whether the trial court reached the proper legal conclusion. *Jadwin v. Minneapolis Star & Tribune Co.,* 367 N.W.2d 476, 483 (Minn.1985).

Under Minn.Stat. § 466.03, subd. 6 (1990), a municipality cannot be held liable for

[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

Discretionary immunity is based upon the doctrine of separation of powers. *Abo El Ela v. State,* 468 N.W.2d 580, 582 (Minn. App.1991). Its purpose is to "assure that the courts do not pass judgment on policy decisions entrusted to coordinate branches of government." *Holmquist v. State,* 425 N.W.2d 230, 231 (Minn.1988).

■ Although almost every government act involves the exercise of some discretion, not every act is entitled to discretionary immunity. *See id.* In determining whether particular conduct is protected, the courts have recognized a distinction between planning level or discretionary decisions, which are protected, and operational level decisions, which are not protected. *Pletan v. Gaines,* 494 N.W.2d 38, 40 (Minn. 1992). A planning level decision is one which involves

questions of public policy, that is, the evaluation of factors such as the financial, political, economic, and social effects of a given plan or policy.

*Holmquist,* 425 N.W.2d at 232. In contrast, an operational level decision involves "conduct which merely puts into effect a predetermined plan." *Gonzales v. Hollins,* 386 N.W.2d 842, 845 (Minn.App.1986).

In *Anderson v. City of Minneapolis,* 287 Minn. 287, 178 N.W.2d 215 (1970), the supreme court held that the issuance of a building permit was a protected discretionary function.

The act * * * involved an exercise of discretion in the sense that the city's employee had to make a judgment as to whether plans submitted in support of the application for the permit constituted a permissible use of the property in the area involved.

*Id.* at 288, 178 N.W.2d at 217. The court further noted that, even if the proposed use of the land had been so clearly illegal as to eliminate any exercise of discretion on the part of the city's employee, the landowner still would be precluded from recovering damages from the city. *Id.* at 289, 178 N.W.2d at 217.

[The landowner] and those who act for him are charged with the knowledge of the laws regulating the granting of the permit and any expense incurred is at the owner's risk, at least in so far as the city is concerned.

*Id.*

Fourteen years later, in *Wilson v. Ramacher,* 352 N.W.2d 389, 393 (Minn.1984), the supreme court applied *Anderson* in a case involving the issuance of a permit authorizing landowners to put fill on their property and held that issuance of the permit was a protected discretionary function.

And, in *Snyder,* 441 N.W.2d at 787, the supreme court reaffirmed its position that, as a general rule, the issuance of a building

permit is a protected discretionary function.

[W]e note that more than eighteen years have passed since our decision in *Anderson*, ample time for the legislature to have corrected any misapprehension this court may have entertained in *Anderson* regarding legislative intent to protect municipalities from liability in the issuance of building permits.

*Id.*

In the present case, appellant contends that the decisionmaking process involved in the issuance of a certificate of occupancy is similar to that involved in the issuance of a building permit and therefore the issuance of a certificate of occupancy should also be a protected discretionary function. We agree.

In reaching this decision, we are mindful of the effects that an opposite ruling would have. If we were to hold that the issuance of a certificate of occupancy was not a protected discretionary function, we would essentially be mandating that municipalities become insurers of construction. This is contrary to the purpose underlying the enactment and enforcement of building codes and ordinances.

Building codes, the issuance of building permits, and building inspections are devices used by municipalities to make sure that construction within the corporate limits of the municipality meets the standards established. As such, they are designed to protect the public and are not meant to be an insurance policy by which the municipality guarantees that each building is in compliance with the building codes and zoning ordinances. The charge for building permits is to offset expenses incurred by the city in promoting the public interest and is in no way an insurance premium which makes the city liable for each item of defective construction in the premises.

*Hoffert v. Owatonna Inn Towne Motel, Inc.*, 293 Minn. 220, 223, 199 N.W.2d 158, 160 (1972).

2. *Existence of a Private Duty.*

██ Appellant's second issue does not involve immunity from suit, rather it involves a defense to liability. Accordingly, interlocutory review is not appropriate. *See* Minn.R.Civ.App.P. 103.03; *Erickson v. County of Clay*, 451 N.W.2d 666, 669 (Minn.App.1990) (order denying summary judgment generally not appealable). *But see McGovern v. City of Minneapolis*, 475 N.W.2d 71, 72 (Minn.1991) (order denying summary judgment on grounds of immunity is immediately appealable). Although this court "may review any other matter as justice may require," Minn.R.Civ.App.P. 103.04, we conclude that the interests of justice would not be served, and would in fact be harmed, by extending interlocutory review to this issue. *See Johnson v. Northside Res. Redev. Council*, 467 N.W.2d 826, 829 n. 1 (Minn.App.1991).

## DECISION

The trial court erred in denying appellant's motion for summary judgment on the grounds of discretionary immunity.

Reversed.

FORSBERG, J., dissents.

FORSBERG, Judge (dissenting).

I respectfully dissent from the majority's opinion on the issue of discretionary immunity. I would find that, based upon the supreme court's holding in *Andrade v. Ellefson*, 391 N.W.2d 836, 839 (Minn.1986), the issuance of a certificate of occupancy is not a protected planning level decision entitled to discretionary immunity under Minn. Stat. § 466.03, subd. 6 (1990).

In *Andrade*, plaintiffs alleged that Anoka County was negligent in its inspection and licensing of a day-care home in which several children were injured. *Id.*, 391 N.W.2d at 837. The trial court dismissed the action on the grounds of discretionary immunity. *Id.* at 838. In reversing, the supreme court stated: "The license inspections conducted by the county were not at the planning or policy level where discretionary immunity usually applies." *Id.* at 839.

The actions of the City in this case are analogous to those of the county in *Andrade*. The City's building inspector conducted an inspection of the Masonicks' home and subsequently issued a certificate of occupancy. The certificate of occupancy essentially operated as a "license" which allowed the Masonicks to move into their new home. Because the actions of the City's employee occurred at the operational level, as opposed to the planning level, I would hold that under *Andrade*, the defense of discretionary immunity is not applicable.

A denial of immunity in this case would also be consistent with the rule that the discretionary function exception is to be narrowly construed. In *Holmquist v. State*, 425 N.W.2d 230, 231 (Minn.1988), the supreme court cautioned:

> Read literally, the discretionary function exception would preserve immunity for almost all government acts because almost everything a government employee does * * * involves the exercise of some discretion. We have recognized, however, that the legislature did not intend the discretionary function exception to swallow the general rule of allowing recovery for those injuries negligently inflicted in the performance of government operations.

Finally, a decision holding that the City is not immune from liability for the issuance of a certificate of occupancy would not, as feared by the majority, make the City a de facto insurer of construction. In order to prevail on a claim against the City for negligence, plaintiffs would still have to overcome the public/private duty hurdle. Whether or not plaintiffs would be able to overcome that hurdle is dependent upon the outcome of certain factual disputes, the resolution of which is best left to the fact finder. By declining to allow the City to hide behind the cloak of immunity, all that this court would be doing is giving plaintiffs the opportunity to have their day in court.

For the above reasons, I would affirm the trial court's denial of appellant's motion for summary judgment on the issue of discretionary immunity. Accordingly, I dissent.