Michael J. McNAMARA, et al., Plaintiffs,

v.

Dennis R. McLEAN, et al., Defendants and Third–Party Plaintiffs, Respondents,

v.

HUTTEL EXCAVATING, INC., Third–Party Defendants,

St. Louis County, Third–Party Defendant, Appellant.

No. C3–95–28.

Court of Appeals of Minnesota.

May 30, 1995.

Timothy N. Downs, Duluth, for Dennis R. McLean, et al.

Alan L. Mitchell, St. Louis County Atty., Heather C. Petersen, Asst. County Atty., Duluth, for St. Louis County.

Considered and decided by DAVIES, P.J., AMUNDSON and FOLEY,* JJ.

## OPINION

DANIEL F. FOLEY, Judge.

Home buyers sued sellers for misrepresenting the condition of the home's sewage treatment system. Sellers, in turn, sued county for negligently (1) issuing the construction permit and (2) conducting a "point-of-sale" inspection of the system. County

appeals the denial of its motion for summary judgment based on statutory and public duty immunity. We reverse and remand.

## FACTS

In October 1985, respondents Dennis and Georgia McLean hired Huttel Excavating to construct a new individual sewage treatment system for their home. Huttel submitted proposed plans and an application for a construction permit to appellant St. Louis County. The county issued a permit after finding that the proposed system met minimum state and county standards, and the system was installed.

About five years later, in August 1990, the McLeans decided to sell their home and asked the county to conduct a "point-of-sale" inspection of the system. This inspection is a visual evaluation of the ground above and around the system for any obvious signs of failure; it is typically conducted at the request of the property owner or a bank before refinancing or selling a home. After conducting the inspection, the county determined that the McLeans' system did not show any obvious signs of failure. But the county warned in its report that "A FAVORABLE INSPECTION REPORT DOES NOT GUARANTEE THAT THE SYSTEM WILL CONTINUE TO FUNCTION PROPERLY."

In October 1990, the McLeans sold their home to Michael and Elizabeth McNamara. In February 1991, the sewage treatment system failed. After correcting the problem, the McNamaras sued the McLeans for allegedly misrepresenting the condition of the sewage treatment system. The McLeans, in turn, sued St. Louis County for negligence in: (1) issuing the sewage system construction permit in 1985, and (2) conducting the "point-of-sale" inspection in 1990. St. Louis County moved unsuccessfully for summary judgment based on immunity, and this appeal followed.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

art. VI, § 2.

## ISSUES

1. Did the district court err in denying the county's motion for summary judgment on the ground that Minn.Stat. § 466.03, subd. 6, provides immunity from suit for alleged negligence in issuing a permit to construct a sewage treatment system?

2. Did the district court err in denying the county's motion for summary judgment on the ground that the public duty immunity doctrine bars suit against a municipality for alleged negligence in inspecting a sewage treatment system?

3. Does a genuine issue of material fact remain so as to preclude the county's motion for summary judgment?

## ANALYSIS

■ An order denying summary judgment is ordinarily not appealable. *Erickson v. County of Clay*, 451 N.W.2d 666, 669 (Minn. App.1990). But appeal from an order denying summary judgment on the ground of immunity is allowed where the appeal is not based solely on the factual merits of the claim. *McGovern v. City of Minneapolis*, 475 N.W.2d 71, 73 (Minn.1991).

1. *Immunity for Issuing Construction Permit*

■ Under Minn.Stat. § 466.03, subd. 6 (1992), a municipality cannot be held liable for

[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

"Whether the acts of [a county's] employees are a discretionary function is a legal question." *Snyder v. City of Minneapolis*, 441 N.W.2d 781, 786 (Minn.1989). This court is not bound by the district court's decision of a purely legal question. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

■ Almost every government act involves the exercise of some discretion, but not every act is entitled to discretionary immunity. The courts have recognized a distinction between planning level decisions, which are protected, and operational level decisions, which are not. *Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn.1992). While planning level decisions involve public policy questions "such as the financial, political, economic, and social effects of a given plan or policy," *Holmquist v. State*, 425 N.W.2d 230, 232 (Minn.1988), operational level decisions involve conduct that simply "puts into effect a predetermined plan." *Gonzales v. Hollins*, 386 N.W.2d 842, 845 (Minn.App.1986).

■ The county argues immunity applies here because the process for issuing a permit to construct a sewage treatment system is identical to the process required for issuing building permits. We agree.

This court has previously granted immunity where the decision-making process being evaluated is similar to that involved in the issuance of a building permit. *See Masonick v. J.P. Homes, Inc.*, 494 N.W.2d 910, 913 (Minn.App.1993) (holding that "the decision making process involved in the issuance of a certificate of occupancy is similar to that involved in the issuance of a building permit and therefore * * * a protected discretionary function"). And the record indicates that the procedure followed in deciding whether to grant a permit to construct a sewage treatment system is similar to that involved in deciding whether to grant a building permit—both attempt to ensure that minimum safety requirements are met. *See Anderson v. City of Minneapolis*, 287 Minn. 287, 288, 178 N.W.2d 215, 217 (1970) ("The act [of issuing a building permit] involved an exercise of discretion in the sense that the city's employee had to make a judgment as to whether plans submitted * * * constituted a permissible use of the property.").

■ Respondents contend that immunity under section 466.03, subdivision 6, does not apply because here the county allegedly supervised and controlled the installation of the septic system. Respondents cite *Gilbert v. Billman Constr.*, 371 N.W.2d 542 (Minn. 1985), in support.

But *Gilbert* is distinguishable. In *Gilbert*, the court specifically noted that immunity did not apply because the county's agent had personally *designed* the septic system that had failed. *Id.* at 546. The facts showed

that the county's agent had personally drawn a sketch that "indicated the size of the septic tank, the length of the pipes, and the distances to be kept from the property lines." *Id.* at 546–47. The county's agent also

> included this sketch with a permit he sent to [the landowner], expressly approving "construction of *this* system in accordance with *these* approved plans."

*Id.* at 547 (emphasis in original).

Here, in contrast, although respondents allege that the county was "personally involved," there is no evidence that the county had designed the septic system or drew a sketch in support of a proposed design. Nor is there any evidence showing that the county or its agents had any "direct" involvement in the design process.

Thus, the trial court erred in denying summary judgment based on Minn.Stat. § 466.03, subd. 6. We agree with the county that if the issuance of a construction permit were not a protected discretionary function, the court would essentially be mandating that municipalities become insurers of construction—something contrary to the purpose underlying the enactment and enforcement of building codes and ordinances. *See Hoffert v. Owatonna Inn Towne Motel,* 293 Minn. 220, 223, 199 N.W.2d 158, 160 (1972) (holding that building permits and inspections "are not meant to be an insurance policy by which the municipality guarantees that each building is built in compliance with the building codes and zoning codes"); *Masonick,* 494 N.W.2d at 913 (same).

2. *Immunity for Inspection*

The county contends that the claim based on the "point-of-sale" inspection is barred because governmental immunity for public duties applies. Respondents, on the other hand, argue that public duty immunity does not apply because the inspection constituted a private duty.

In *Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 804 (Minn.1979), the Minnesota Supreme Court held that governmental functions performed on behalf of the general public are immune from attack by a negligence action, but that suit may be brought where a private duty is created. We review this issue by determining whether a private duty was created based on any of the four factors in *Cracraft. See id.* at 806–07 (listing four factors that create a private duty).

A private duty is created under the first factor where the municipality had "actual knowledge of the dangerous condition." *Id.* at 806. Respondents contend that the suit is proper because the county had "actual knowledge of the design, construction and location of the septic system." But the knowledge required is of a "dangerous condition." Because there is no evidence that the county knew of any dangerous condition with respect to the septic system, there is no ground for suit under the first factor. *See Andrade v. Ellefson,* 391 N.W.2d 836, 841 (Minn.1986) (mere "constructive knowledge" of a dangerous condition is insufficient to create a private duty).

A private duty is created under the second factor where there was "reasonable reliance by persons on the municipality's representations and conduct." *Cracraft,* 279 N.W.2d at 806–07. Respondents argue that this factor is met because they "relied on the report by the County and the sale went forward." Respondents contend that the McNamaras "would not have purchased the * * * property if [the McNamaras] had been aware of a problem with the septic system."

But general reliance on an inspection is not sufficient to create a duty. *Id.* at 807. For liability to attach, "reliance must be based on specific actions or representations." *Id.* A review of the inspection report on which respondents rely shows that there were no specific representations warranting the future functioning of the system.[1]

---

1. On the contrary, the POS inspection report states:

> This surface inspection does not mean that the system is approved by this department, only that it is not obviously failing at the time of inspection. A FAVORABLE INSPECTION REPORT DOES NOT GUARANTEE THAT THE SYSTEM WILL CONTINUE TO FUNCTION PROPERLY. * * * [T]his observation of the ground surface may have little relevance concerning how well the system will work in the future.

Hence, there is no ground for suit based on the second factor.

 Third, a private duty may be created where an ordinance or statute "sets forth mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole." *Id.* at 807. Respondents contend that they and the McNamaras fall into such a "particular class," but do not support this allegation with any text from a statute or ordinance. Because we find no statute or ordinance authorizing "point-of-sale" inspections, no private duty was created under this factor.[2]

 Finally, a private duty is created where the municipality has failed to "use due care to avoid increasing the risk of harm." *Id.* Respondents do not address this factor, nor is there evidence that the county increased the risk of harm.

In sum, because there is no evidence that the actions in conducting the "point-of-sale" inspection constituted a private duty, the trial court erred in denying the county's motion for summary judgment based on public duty immunity.

### 3. *Summary Judgment*

 In order to successfully oppose a motion for summary judgment, a party cannot rely upon mere general statements of fact but rather must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial.

*Hunt v. IBM Mid Am. Employees Fed. Credit Union,* 384 N.W.2d 853, 855 (Minn. 1986). A disputed issue is material if its resolution is necessary to the outcome of the case. *Zappa v. Fahey,* 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976).

Respondents argue that material fact issues raised in both the McNamara's complaint and a letter from the McNamaras'

lawyer preclude summary judgment. We disagree.

The McNamaras' complaint only states that the county "required * * * that said septic system be repaired or replaced." But this issue is not disputed. Alternatively, the respondents' complaint contains only the bald assertion that the county "approved the design * * * and supervised the construction" of the system. But, as previously discussed, the mere fact that the county approved the design plans is insufficient to establish a duty. *See Anderson,* 287 Minn. at 288, 178 N.W.2d at 217 (approval of plans and issuance of building permit are discretionary actions immune from suit).

 The letter written by the McNamaras' attorney is equally inadequate to support the claim that material fact issues remain.[3] First, aside from the fact that it is not in affidavit form, the letter was apparently signed by a secretary—not by the McNamara's attorney (we note the circle around the secretary's initials). Second, the letter is not evidence, but rather inadmissible hearsay, and therefore may not be used to overcome a motion for summary judgment. *See Hunt,* 384 N.W.2d at 855. And even if the letter were admissible, it still does not contain any assertion that the county actually "approved the design * * * and supervised the construction" of the septic system. Rather, the letter simply states Mr. Johnson's belief as to why the system failed and how the problem may be corrected. The failure of the septic system is not disputed, nor is it material to the negligence issue.

### DECISION

The trial court erred in denying the county's motion for summary judgment where there were no material fact issues and where (1) Minnesota law provides municipalities with immunity from suit for alleged negligence in issuing a construction permit for an

---

2. The only relevant law is Minnesota Rules chapter 7080 and St. Louis County Individual Sewage Treatment Systems Ordinance No. 36. But these regulations serve to protect the health of the general public and the surface and ground waters in Minnesota—not any particular class of persons.

3. The letter states:

> I am writing to set forth what will be the essence of Dan Johnson's testimony regarding the failing septic system at the McNamara property and his work in modifying the system to put it back in working order.

individual sewage treatment system, and (2) the doctrine of public duty immunity bars claims based on a county's alleged negligence in conducting a "point-of-sale" inspection of an individual sewage treatment system.

**Reversed and remanded for entry of judgment in favor of the county.**