Michael D. **PATZWALD**, et al.,
Respondents,

v.

Gene Edward **KREY**, Respondent,

Rita M. **Patzwald**, petitioner, Appellant.

No. C2–86–157.

Court of Appeals of Minnesota.

Aug. 5, 1986.

Gerald R. Freeman, Minneapolis, for Michael D. Patzwald, et al.

Winfred S. Herzog, Minneapolis, for Gene Edward Krey.

Lawrence M. Rocheford, St. Paul, for Rita M. Patzwald.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from the denial of appellant Rita M. Patzwald's motion for summary judgment. The trial court determined that a genuine issue of material fact existed as to whether Patzwald had a duty to warn her wedding guests of the impending criminal activity of respondent Gene E. Krey. We reverse.

## FACTS

Gene E. Krey, armed with a .22 caliber rifle and dressed in full Nazi regalia, appeared unexpectedly at a wedding reception hosted by Rita M. Patzwald for her daughter. He fired the weapon indiscriminately into the crowd of guests killing one and injuring three others.

Krey and Patzwald dated for approximately three years prior to the incident. Several months before her daughter's wedding Patzwald decided to end her relationship with Krey because of his erratic behavior.

Shortly after the shootings, Patzwald gave a statement to the police describing a number of incidents involving Krey in which he threatened violence towards her and others, including a physical assault. After Patzwald broke off her relationship with Krey he began harassing her by repeatedly driving by her house honking his car's horn. Krey also threatened to "get her" several times, slashed articles of his clothing and threw them on Patzwald's front porch, and left a picture of Patzwald in her front doorway that he had stabbed full of holes. She contacted the police on two separate occasions to report Krey's behavior during this period of continued harassment.

On the morning of the wedding, Patzwald stated that her daughter and Krey spoke for several minutes before he went into his house and came out with a wedding gift for her. Around noon that day Patzwald received a telephone call from Krey suggesting that she show some of her reception guests the work he had done around her house. Patzwald had no indication from either of these two incidents that

Krey, who was not invited to the wedding, would arrive at the reception armed with a rifle.

A personal injury action was brought by each of the injured wedding guests against Patzwald alleging a duty on her part to warn them of Krey's potential criminal activity. Patzwald moved for dismissal of the action arguing alternatively that the guests' complaint failed to state a claim against her upon which relief could be granted or that she was entitled to judgment on the pleadings because the guests' damages were caused by the conduct of Krey, over whom Patzwald had no control.

The trial court denied Patzwald's alternative motions, treating both in the context of a motion for summary judgment. The court noted in its memorandum that an individual has no duty to warn others of harm unless that individual has "knowledge of specifically foreseeable harm." Here the court found that it was for the jury to determine whether Patzwald was "so situated with knowledge of specifically foreseeable harm that a duty to warn may be found."

Following the trial court's decision, this court granted Patzwald's petition for discretionary review. In its order the appeals court, citing *Larson v. Larson*, 373 N.W.2d 287 (Minn.1985), stated that the existence of a homeowner's duty to warn is a legal issue for the court which turns on the foreseeability of criminal activity. Thus, the sole issue on appeal is whether or not the criminal acts of Krey were sufficiently foreseeable as a matter of law to impose the duty to warn on Patzwald.

## ISSUE

Were the criminal acts of Krey sufficiently foreseeable as a matter of law to impose the duty to warn on Patzwald?

## ANALYSIS

Patzwald argues that the trial court should have determined as a matter of law that she had no legal duty to warn her wedding guests of Krey's impending crimi-

nal activity, despite awareness of his erratic and sometimes unpredictable behavior and dangerous propensities.

The injured guests maintain that Patzwald's knowledge of Krey's unusual behavior in the past including one assault and several threats to "get her" should have alerted her to potential problems at the wedding reception. Several hours before the wedding reception Patzwald admitted that she knew Krey was in the immediate vicinity. These admissions taken as a whole, the guests contend, present a factual question on the issue of the foreseeability of Krey's criminal acts sufficient to overcome Patzwald's motion for summary judgment.

■■■ The existence of a legal duty is generally an issue for the court to determine as a matter of law. *Larson v. Larson*, 373 N.W.2d 287, 289 (Minn.1985). Imposition of a legal duty in this case turns on the issue of whether the criminal acts of Krey were sufficiently foreseeable by Patzwald for her to have warned her wedding guests of possible dangers. *See id.* ("In this case, the issue is whether the criminal act of arson was sufficiently foreseeable to impose the duty to warn on appellant"). Only clear cases of foreseeability should be resolved by the court as a matter of law. *Id.* Close questions of foreseeability are for the jury to determine. *Lundgren v. Fultz*, 354 N.W.2d 25, 28 (Minn.1984).

Two Minnesota cases have specifically addressed the question of whether an individual owes a legal duty to warn others of a third person's possible criminal activity. *See Larson v. Larson*, 373 N.W.2d 287 (Minn.1985); *Cairl v. State*, 323 N.W.2d 20 (Minn.1982).

In *Cairl*, plaintiffs brought an action against several governmental agencies alleging the breach of a duty to warn them of the dangerous propensities of a mentally retarded youth released from a state institution on holiday home leave. *Cairl*, 323 N.W.2d at 21. While on home leave the 15 year old, who had a history of starting fires, set his mother's apartment building on fire killing one tenant and totally dam-

aging the rest of the apartment complex. *Id.* at 22.

The Minnesota Supreme Court noted in *Cairl* that one owes "no duty to warn those endangered by the conduct of another * * * [except when one] stands in some special relationship to either the person whose conduct needs to be controlled or to the foreseeable victim of that conduct." *Id.* at 25 n. 7. Applying these principles the court found that those employees of the governmental agencies charged with the care and treatment of the boy had the requisite special relationship to impose on them in certain circumstances a duty to warn. *Id.* Despite such a finding, the *Cairl* court held that the employees had no duty to warn, because such a duty arises "only when specific threats are made against specific victims". *Id.* at 26 (footnote omitted). Because the boy never threatened a specific plaintiff, no duty by the governmental employees to warn the tenants of the apartment of his dangerous tendencies arose. *Id.*

■■■ Here, Patzwald lacked the requisite special relationship that first must be found before a duty to warn may be imposed. Unlike the psychiatric personnel in *Cairl* upon whose judgment the patient depended for any grant of freedom, Patzwald had neither the means nor ability to control the criminal conduct of Krey. More importantly, under the holding in *Cairl*, no duty to warn should be imposed because Krey never made specific threats against any of the guests injured by him at the wedding reception.

In *Larson*, a police officer asked his brother to look after his house while he was out of town for several days. *Larson*, 373 N.W.2d at 288. Two months previously the officer received a vague threat that his house was going to "get it" from a suspect he arrested. *Id.* During his stay at the officer's home, the brother was injured as a result of an explosion caused by an unknown arsonist. *Id.* at 288–89. The brother brought an action against the officer alleging negligence in failing to warn him of the threat to the officer's house received two months before. *Id.* at 289.

The matter went to trial and a favorable verdict for the brother was obtained. *Id.* The Minnesota Supreme Court reversed, holding that the foreseeability issue was so clear cut that it should have been decided by the court as a matter of law. *Id.* at 289. In so holding, the court stated:

> There was no reasonable basis for a reasonable person in appellant's situation at the time he asked his brother to watch his house to anticipate that the person who had made the threat two months previously would follow through on his drunken exclamations. Because, under the circumstances of this case, it was so speculative and unforeseeable that the threat would mature into harm, we conclude that the trial court should have held this as a matter of law that appellant had no duty to warn of such unforeseeable speculative danger.

*Id.*

The injured guests maintain that the risk of harm presented to them by Krey cannot be described as speculative or unforeseeable. Krey specifically threatened Patzwald on several different occasions. Unlike *Larson,* where the person who made the threat was never identified as the person who caused the explosion, here Krey made both the threats and committed the criminal act.

The issue of whether a duty should be imposed on an individual is at its foundation a question of policy: to what extent should we hold one accountable to others for his actions or those actions of others over which he may have control? Although it is true that Patzwald received several threats from Krey that he was going to "get her", she had no indication from him that others at her wedding reception were in any danger. Patzwald owed no obligation to her wedding guests to inform them of a harm that was by any reasonable standard, unforeseeable.

## DECISION

The trial court should have held as a matter of law that Patzwald had no duty to warn of such unforeseeable danger.

Reversed.

CRIPPEN, Judge, dissenting.

The trial court properly concluded that the foreseeability issue was not clear cut and that it should be determined by a jury.

This case is unlike *Larson v. Larson,* 373 N.W.2d 287 (Minn. 1985), where the Minnesota Supreme Court reversed a decision of the trial court to submit a foreseeability issue to a jury. In *Larson,* there had been a single prior threat from the third party actor, a threat that was vague in kind, and the third party's conduct did not occur until two months later. *See id.* at 289. Similarly, in *Cairl v. State,* 323 N.W.2d 20 (Minn. 1982), the absence of foreseeability was determined as a matter of law because the third party actor had made no prior specific threats against specific victims. *See id.* at 26.

Appellant Patzwald evidently made a decision to bring a large number of people to her home, involving the gathering of many guests on her lawn. This decision was made in the face of an unusual series of threats by Gene Edward Krey to act violently toward appellant. Appellant knew that Krey's hostilities extended to her son, and she knew that Krey had threatened her friend and a clergyman of her church. Krey had in fact acted violently toward appellant. Krey's home was near the home of appellant, and his threatening words and conduct repeatedly occurred on appellant's premises. Some of this threatening conduct was bizarre. Twice appellant sought police assistance because of Krey's threats, and there is evidence that she believed Krey's stability was deteriorating. The last of the threats of Krey had been only a couple of weeks before his harmful conduct.

Under the circumstances we should affirm the trial court's decision to submit the matter to a jury.