**Daniel John ABBETT, Respondent,**

v.

**COUNTY OF ST. LOUIS, Petitioner.**

**No. C7-87-2092.**

Court of Appeals of Minnesota.

May 31, 1988.

Review Denied July 28, 1988.

James W. Balmer, Falsani, Balmer, Berglund & Merritt, Duluth, for respondent.

Alan L. Mitchell, Co. Atty., Malcolm B. Davy, Asst. St. Louis Co. Atty., Duluth, for petitioner.

Heard, considered and decided by HUSPENI, P.J., and PARKER and MULALLY,* JJ.

## OPINION

PARKER, Judge.

After suffering severe injuries in an automobile accident, Daniel Abbett sued St. Louis County, claiming negligent road design, construction and maintenance. The county moved for summary judgment, claiming discretionary immunity under Minn.Stat. § 466.03, subd. 6 (1986). The district court denied the motion and ordered both parties to continue with all formal discovery except for one deposition scheduled in Washington, D.C. The county appealed both the order directing further discovery and the order denying summary judgment. The Court of Appeals stayed all discovery pending resolution of this appeal. We affirm.

FACTS

Daniel Abbett, age 22, was severely injured while driving his car on St. Louis County State Aid Highway No. 3, also known as Beck's Road. The road there is straight and level, with no intersections; however, there is a steep slope on one side with trees on the embankment. Abbett's car went off the road to the left, went down the embankment and crashed, rendering him a paraplegic. He brought this action alleging that St. Louis County was negligent in failing to erect a guardrail at the point where his accident occurred.

Andrew E. Ramisch, a highway safety design expert, submitted an affidavit and report in support of Abbett's claim. The pertinent language is as follows:

> It is a well-known fact among highway safety professionals that the erection of guardrail serves to protect motorists from several different elements in a non-forgiving roadside environment, including embankments and fixed objects. In this instance, the existence of trees within the recovery area and an embankment with an excessive slope represent a violation of good engineering practice. Because it is foreseeable that a motorist may stray into this area north of the highway, it is incumbent upon the public authority to provide proper protection for the motorist. The most feasible way of doing so at this location would be through the erection of a guardrail to prevent vehicles from going down the embankments and rolling over or colliding with the trees.

Abbett has not alleged or shown that the county had any knowledge of a dangerous condition at the accident site; however, he quoted the Minnesota Department of Transportation Road Design Manual, which lists as hazards possibly warranting guardrail

> high embankments, and steep side slopes existing singly or in combination; fixed objects, such as * * * rows of trees along the roadside.

The county submitted the affidavits of Richard H. Hansen, a registered highway

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

engineer in Minnesota for 18 years, and Joseph J. Varda, a highway maintenance engineer in St. Louis County for 17 years. Both relied on the manual when explaining how to decide where to install guardrail. Varda stated:

> As stated in the * * * Manual, there is no analytical way of precisely determining whether guardrail is needed in a given situation because guardrail itself constitutes a formidable obstacle and should not be installed unless it will reduce accident severity.

> Unnecessary guardrail poses an additional roadside hazard because * * * as an obstacle, [it may] cause injuries and because as in this case, a car that crosses the highway and hits the guardrail may be redirected into a collision with oncoming traffic.

> As stated in the * * * Manual, when highway improvements are being designed for existing highways, as much guardrail as possible should be eliminated.

> Decisions regarding the placement of guardrail beside County highways are discretionary acts requiring the weighing and balancing of numerous competing safety factors and factual variables.

On this evidence the trial court denied the county's motion for summary judgment, and the county appeals.

## ISSUE

Is the county's decision to not place guardrail at the accident site insulated by the doctrine of discretionary immunity?

## DISCUSSION

On appeal of a denial of summary judgment, this court determines whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominiums*, 281 N.W.2d 328, 330 (Minn. 1979). The facts are viewed in the light most favorable to the nonmoving party.

Municipalities are immune from liability for claims based on

the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

Minn.Stat. § 466.03, subd. 6 (1986).

Acts can be either discretionary and immune or ministerial and not immune; the test applied in earlier cases was whether the act was a planning or merely operational decision. *Berg v. City of St. Paul*, 414 N.W.2d 204, 206 (Minn.Ct.App.1987). However, two recently released Minnesota Supreme Court cases articulate a narrower, more precise standard. *Nusbaum v. State*, 422 N.W.2d 713 (Minn.1988), held that placement of a speed zone sign was not a discretionary, protected function. *Chabot v. City of Saulk Rapids*, 422 N.W.2d 708 (Minn.1988), held that the city's decision to not improve an existing drainage system was immune, but that the immunity was waived by the city's purchase of liability insurance.

The supreme court stated that the simple, conclusory labeling of government conduct as "operational" or "planning" is not helpful. *Id.* at 710. In *Chabot* they quoted *Nusbaum* and articulated the specific standard to be applied:

> [In *Nusbaum*], we made clear that certain government conduct is protected under the discretionary function exception and not simply because it is identified as a planning decision. Rather, it is immune because the specific function involves policy-making that can be made only by the legislative branch of the government. Where the policy-making involves a balancing of social, political, or economic considerations, the conduct is immune as a discretionary function.

*Chabot*, 422 N.W.2d at 710–11.

*Nusbaum* articulated the distinction between policy-making decisions (protected) and scientific or professional decisions (unprotected):

> The critical inquiry that emerges * * * is whether the challenged governmental conduct involved a balancing of policy objectives. Not all acts involving the exercise of judgment by agents of the government are protected as discretion-

ary functions. The protection afforded by the discretionary function exception does not extend to professional or scientific judgment where such judgment does not involve a balancing of policy objectives.

*Nusbaum*, 422 N.W.2d at 722.

When analyzing whether the decision to install guardrail is a policy-making decision or a professional/scientific decision, we must apply the *Nusbaum* standard to the manual's directives and the interpretations given those directives by the highway engineers. First, the manual lists where guardrails *may* be installed. The area where Abbett's accident occurred has "steep side slopes existing singly or in combination" and "rows of trees" on the embankment and therefore falls within this category. Engineer Varda said there is no "analytical way of precisely determining whether guardrail is needed," which implies that discretion is required. The manual offers a scientific reason for limiting the installation of guardrail, stating that it creates an "additional roadside hazard." This reasoning supports the policy of eliminating "as much guardrail as possible" when improving or designing highways.

Varda further describes such decision-making as "discretionary acts requiring the weighing and balancing of numerous competing safety factors and factual variables." This kind of decision-making is most correctly characterized as professional judgment, not policy-making. Whether barriers were put alongside this particular stretch of Beck's road was a professional decision made by someone who was guided by the underlying policy of minimizing barriers because they become dangers themselves. This is far different from the kind of "policy-making that can be made only by the legislative branch of the government." *Chabot*, 422 N.W.2d at 710. Such a decision is not protected by discretionary immunity.

Affirmed.