**Phetdara RASIVONG, Respondent,**

v.

**LAKEWOOD COMMUNITY COLLEGE, Appellant.**

**No. C3–93–249.**

Court of Appeals of Minnesota.

Aug. 17, 1993.

Review Denied Oct. 19, 1993.

Alan R. Nettles, Daniel B. Johnson, Meyer & Njus, P.A., Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., David T. Schultz, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by ANDERSON, C.J., and NORTON and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

On appeal from the denial of a motion for summary judgment, appellant Lakewood Community College argues the district court erred in finding its employees' decisions not to cancel a festival held on its property, not to hire additional security, and not to warn participants of the danger of potential violence were unprotected by the doctrine of discretionary immunity. We reverse.

## FACTS

Lakewood is located in White Bear Lake, Minnesota. Since 1989, Lakewood's Southeast Asian Club has sponsored an annual festival called Southeast Asian Days. During this two-day event, the entire community, but primarily the Southeast Asian community, participates in athletic events, takes part in recreational events, and eats Southeast Asian food. The event is held on Lakewood's property and draws 1,500 to 2,000 participants. Lakewood allows and even encourages the Club to hold this event because it believes the festival builds good relationships with the Southeast Asian community, attracts Southeast Asian students to its programs, and exposes the White Bear Lake community to Southeast Asian traditions.

The month before the 1991 Southeast Asian Days, four retaliatory incidents between rival Southeast Asian gang members occurred in cities other than White Bear Lake. Rumors began to circulate among the Southeast Asian students at Lakewood that there might be trouble at the festival because members of two gangs planned to attend Southeast Asian Days. The St. Paul and White Bear Lake Police Departments were aware of the trouble between the gangs and also had heard a rumor that there would be a disturbance at the soccer tournament at Southeast Asian Days.

The record shows Lakewood employees knew little, if anything, about the rumored gang violence. Willi Nesbitt, Dean of Students at Lakewood, knew about the gang-related, retaliatory incidents in other cities but had heard only very vague rumors about trouble at Southeast Asian Days. The talk Nesbitt had heard did not link gangs to the rumored trouble. Similarly, the president of the Club and the Club's adviser also had heard only vague rumors that there would be trouble at the festival. One White Bear Lake police officer did telephone Lakewood's business manager to confirm that Lakewood was holding a soccer tournament as part of Southeast Asian Days, but nothing in the record indicates the officer told the manager anything specific about the threat of violence at the festival or the general characteristics of Southeast Asian gangs.

When the Club had hosted events in the past, rumors of trouble had spread throughout the school, but no incidents were reported. For these prior events, the Club had hired uniformed, off-duty police officers to provide security. Also, an off-duty Southeast Asian police officer from another community voluntarily attended the events to help with security. Finally, Lakewood employees had notified the White Bear Lake police that it was hosting a special event and had asked officers to pay more attention to Lakewood.

To obtain security for the 1991 Southeast Asian Days, Nesbitt contacted Lieutenant Jan Pitman of the White Bear Lake Police Department. Nesbitt initially offered to hire off-duty police officers to provide security for the event. Pitman told Nesbitt, however, that he would supply two on-duty, uniformed officers for Southeast Asian Days at no charge. Nesbitt thought this number was "ridiculously low," but manpower limitations prevented Pitman from assigning any more officers to the event. Pitman said he would work as one of the uniformed officers assigned to the festival from 11 a.m. until 3 p.m. and would bring the police bus and as many police reserves as would volunteer with him. At 3 p.m., two other uniformed officers would

relieve Pitman and his partner and stay until the festival ended at dusk.

On the first day of Southeast Asian Days, respondent Phetdara Rasivong came to Lakewood to play soccer for the Mankato State University team. While Rasivong was warming up for his game, he was hit in the stomach by one of several gunshots fired during a gang fight that broke out on the soccer field. Rasivong does not know who shot him and does not believe he was shot intentionally. After the shooting, Nesbitt unilaterally canceled the rest of Southeast Asian Days.

Rasivong sued, alleging Lakewood was negligent in not canceling Southeast Asian Days in light of the threatened violence, in not providing adequate security, and in not warning him of the danger of violence at the event. The district court denied Lakewood's motion for summary judgment on grounds that, while the initial determination to host Southeast Asian Days was protected by the doctrine of discretionary immunity, the implementation of that determination involved operational level decisions for which Lakewood could be held liable. The district court also found Lakewood had a duty to use reasonable care to prevent injury to Rasivong that arose out of its status as a landowner and as a school.

## ISSUE

Did the district court err in denying Lakewood's motion for summary judgment on grounds that the decisions not to cancel Southeast Asian Days, not to hire additional security, and not to warn the participants of potential violence were unprotected by the doctrine of discretionary immunity?

## ANALYSIS

■ A defendant may obtain interlocutory review of an order denying a defense motion for summary judgment based on claims of governmental discretionary deci-

sion immunity. *McGovern v. City of Minneapolis,* 475 N.W.2d 71, 73 (Minn.1991).

On appeal from the denial of a motion for summary judgment, we must examine the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). Since the applicability of the doctrine of discretionary immunity is a question of law, we need give no deference to the district court's decision on this issue. *Snyder v. City of Minneapolis,* 441 N.W.2d 781, 786 (Minn.1989). We must view the evidence, however, in the light most favorable to the nonmoving party. *Offerdahl,* 426 N.W.2d at 427.

Generally, the state is liable for the torts committed by its employees acting within the scope of their employment.[1] Minn.Stat. § 3.736, subd. 1 (1990). An exception to this general rule, however, provides the state is immune from liability for "a loss caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused." Minn.Stat. § 3.736, subd. 3(b) (1990).

■ The discretionary acts exception is intended "to preserve the separation of powers by insulating executive and legislative policy decisions from judicial review through tort actions." *Rico v. State,* 472 N.W.2d 100, 104 (Minn.1991) (citing *Nusbaum v. County of Blue Earth,* 422 N.W.2d 713, 718 (Minn.1988)). The crucial inquiry is " 'whether the conduct involves the balancing of public policy considerations in the formulation of policy.' " *Pletan v. Gaines,* 494 N.W.2d 38, 43–44 (Minn.1992) (quoting *Holmquist v. State,* 425 N.W.2d 230, 234 (Minn.1988)).

■ Thus, planning level decisions generally are protected because they involve questions of public policy, that is, the evaluation of factors such as the financial, political, economic, and social effects of a given plan or policy.

---

1. Community colleges are included in the definition of "state" in the Tort Claims Act. Minn. Stat. § 3.732, subd. 1(1) (1990).

*Holmquist,* 425 N.W.2d at 232. Conversely, operational level decisions or the decisions related to "the ordinary day-to-day operations of the government" usually are not protected because they involve no balancing of policy objectives. *Id.*

■ As nearly every task performed by a government employee involves some degree of discretion, the discretionary acts exception must be read narrowly. *Id.* at 231. The state has the burden to prove it is immune under the discretionary acts exception. *Nusbaum v. County of Blue Earth,* 422 N.W.2d 713, 722 n. 6 (Minn. 1988).

■ Here, Lakewood first claims the decision not to cancel the event was protected by the discretionary acts exception.[2] We agree. The decision not to cancel the festival was analogous to a decision to proceed with the event. The decision to go ahead with Southeast Asian Days involved the same policy considerations as the initial decision to host the event. Both decisions involved the balancing of policy objectives such as public safety, Lakewood's relationship with the Southeast Asian community, Lakewood's relationship with its Southeast Asian students, Lakewood's image and reputation, and other social concerns. As the weighing of policy considerations was inherent in the decision not to cancel Southeast Asian Days, this decision was protected from liability by the doctrine of discretionary function immunity.

■ Lakewood next argues the decision not to hire additional security was protected by discretionary immunity. In *Mosely v. Portland School Dist. No. 1J,* 843 P.2d 415 (Or.1992), the Oregon Supreme Court addressed a similar issue that arose when a student was injured in a fight at a high school. When interpreting the discretionary function exception of Oregon's Tort

Claims Act, which is virtually identical to Minn.Stat. § 3.736, subd. 1, the court determined:

> The principal's decisions on the number and allocation of his security personnel were matters involving "room for policy judgment" and "the adaption of means to an end." * * * [Plaintiff] faulted [the principal] for not allocating his security personnel differently and for not choosing to use an additional security system. Both of those choices, however, are classic policy choices that are entitled to discretionary immunity.

*Id.* at 419–20.

We find the reasoning in *Mosely* persuasive. Here, Nesbitt decided to rely on the White Bear Lake Police Department to provide all security for Southeast Asian Days. Nesbitt's decision involved the balancing of a number of policy considerations including public safety, the effectiveness of the White Bear Lake Police Department, whether Lakewood would appear to be second-guessing the department by obtaining additional security, whether obtaining additional security would damage Lakewood's relationship with the department upon which Lakewood relied for all its security needs and for instructors for its law enforcement program, and whether Lakewood's limited budget should be used to obtain additional security. As in *Mosely,* Nesbitt's decision not to hire additional security was a classic policy choice that was protected by discretionary immunity.

■ Finally, Lakewood maintains the decision not to warn the participants of the potential for injury was protected by discretionary function immunity. Lakewood also argues it had no duty to warn Rasivong. Generally, a litigant has no right to interlocutory review of issues that do not involve immunity from suit. *See Boop v.*

---

**2.** Lakewood also argues the three decisions at issue here should be viewed as part of the single decision to host the festival. In *Schaeffer v. State,* 444 N.W.2d 876, 881 (Minn.App.1989), however, this court rejected a similar claim on grounds that if all determinations made during a project were seen as a single decision, discretionary immunity would always protect the state from liability because every project involves some policy decisions. *Id.* The supreme court also implicitly has rejected Lakewood's claim because it analyzes discretionary immunity cases by identifying the precise conduct challenged and then addressing each decision separately. *See, e.g. Nusbaum v. County of Blue Earth,* 422 N.W.2d 713, 722–23 (Minn.1988) (three decisions identified and addressed separately).

*City of Lino Lakes,* 502 N.W.2d 409, 411 (Minn.App.1993) (interlocutory appeal of denial of summary judgment inappropriate for issue not involving immunity from suit); *Masonick v. J.P. Homes, Inc.,* 494 N.W.2d 910, 913 (Minn.App.1993) (interlocutory appeal of issue involving defense to suit rather than immunity from suit is inappropriate); *Stubbs v. North Memorial Medical Ctr.,* 448 N.W.2d 78, 81 (Minn.App.1989) (denial of motion for summary judgment ordinarily not appealable), *pet. for rev. denied* (Minn. Jan. 12, 1990).

▮ Whether a legal duty exists, however, is a question of law. *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn.1985); *Spitzak v. Hylands, Ltd.,* 500 N.W.2d 154, 156 (Minn.App.1993), *pet. for rev. denied* (Minn. July 15, 1993). The parties have briefed this issue below and to this court. *Cf. McGuire v. C & L Restaurant Inc.,* 346 N.W.2d 605, 610 (Minn.1984) (although constitutional challenges to statutes generally may not be raised for first time on appeal, supreme court would make an exception where issue was implicitly raised below and briefed on appeal). Further, even when the record is viewed in the light most favorable to Rasivong, the non-moving party in this summary judgment action, Lakewood is entitled to judgment as a matter of law. *Cf. Boop,* 502 N.W.2d at 411 (inappropriate to grant interlocutory review of determination that special duty issue involved material fact disputes). Thus, extending review to Lakewood's duty to warn Rasivong will resolve all issues between the parties and obviate the need for trial. *See Emme v. C.O.M.B., Inc.,* 418 N.W.2d 176, 179 (Minn. 1988) (policy behind requiring final judgment before appeal is not served by allowing appeal of interlocutory order unless reversal would obviate need for trial); *McGuire,* 346 N.W.2d at 614 n. 11 (in interests of judicial efficiency, reviewing court may consider issue not before it to resolve all controversies between parties at same time); *Stubbs,* 448 N.W.2d at 81 (interests of judicial efficiency served by considering denial of summary judgment motion when trial court incorrectly concluded cause of action existed).

▮ Given these circumstances and to serve the interests of justice and judicial economy, we make an exception to the general rule and extend review to the question of Lakewood's duty to warn Rasivong. *See* Minn.R.Civ.App.P. 103.04; *cf. Masonick,* 494 N.W.2d at 913 (review not extended to issue not involving immunity when interests of justice would not be served). Because we conclude Lakewood had no duty to warn Rasivong as a matter of law, we will not determine whether that decision was protected by discretionary immunity. *See Sayers by Sayers v. Beltrami County,* 481 N.W.2d 547, 552 (Minn.1992) (issue of discretionary immunity need not be decided when county owed no duty to victim as a matter of law).

▮ Generally, a person has no duty to protect another from the actions of a third party

> unless a special relationship exists, either between the actor and the third person which imposes a duty to control, or between the actor and the other which gives the other the right to protection.

*Delgado v. Lohmar,* 289 N.W.2d 479, 483 (Minn.1979) (citing *Cracraft v. City of St. Louis,* 279 N.W.2d 801 (Minn.1979)). Whether a person has a duty to protect another from a third party's acts depends "on the relationship of the parties and the foreseeable risk involved." *Erickson v. Curtis Inv. Co.,* 447 N.W.2d 165, 168–69 (Minn.1989). Clear cases of foreseeability should be resolved by the court as a matter of law. *Larson,* 373 N.W.2d at 289.

▮ Rasivong relies on *Peterson v. Balach,* 294 Minn. 161, 174, 199 N.W.2d 639, 647 (1972), to argue a special relationship existed between himself and Lakewood as a landowner that required Lakewood to use reasonable care to protect him from injury. A landowner is required to use reasonable care in carrying on activities on the land and to maintain the property's physical condition to ensure entrants on its land are not exposed to unreasonable risks of harm. *Pietila v. Congdon,* 362 N.W.2d 328, 333–34 (Minn.1985). A landowner has no duty, however, to protect an

entrant on its land from a third party's criminal activities because a criminal act committed by an unknown person "is not an activity of the owner and does not constitute a condition of the land." *Id.* at 333. Accordingly, despite its status as a landowner, Lakewood had no duty to protect Rasivong from a criminal assault by an unknown third party.

Moreover, even assuming arguendo that some other special relationship existed between Lakewood and Rasivong that entitled him to protection, Lakewood still had no duty to warn Rasivong of the danger of harm because the criminal assault that occurred in this case was not foreseeable. *See Erickson,* 447 N.W.2d at 168–69 (whether business owner owes duty to entrant onto its premises depends on parties' relationship and foreseeability of risk involved); *Larson,* 373 N.W.2d at 289; *Patzwald v. Krey,* 390 N.W.2d 920, 923 (Minn. App.1986), *pet. for rev. denied* (Minn. Oct. 22, 1986).

In *Larson,* the supreme court found that although a person had threatened to damage the house of the police officer who arrested him, the crime of arson that occurred in the case was not foreseeable as a matter of law because the threat was not specific, it was not clear the person who made the threat committed the crime, and the risk was too speculative. *Larson,* 373 N.W.2d at 289. Relying on *Larson,* this court decided in *Patzwald* that, although a former boyfriend had threatened "to get" Patzwald, the act of shooting into a crowd of guests on her lawn was not foreseeable as a matter of law when there had been no indication that anyone other than Patzwald was in any danger of injury. *Patzwald,* 390 N.W.2d at 923.

As in *Larson* and *Patzwald,* Lakewood had no duty to warn Rasivong of the danger of injury because the criminal act that occurred here was not foreseeable as a matter of law. Lakewood employees were aware only that there had been rumors of "trouble" at Southeast Asian Days. The rumors heard by Lakewood employees were unspecific and unsubstantiated. None of the rumors suggested the "trouble" would involve gangs or weapons of any kind. Moreover, Lakewood employees heard nothing that indicated participants in Southeast Asian Days were in any danger of harm.[3] In fact, the rumors were very similar to gossip that had spread before other Southeast Asian Club events when no injuries or even incidents had occurred.

Given the speculative, non-specific nature of the rumors of trouble that Lakewood employees heard, the criminal act that occurred in this case was not foreseeable as a matter of law. Thus, we conclude that Lakewood had no duty to warn Rasivong of the danger of injury.

## DECISION

The decisions not to cancel Southeast Asian Days and not to hire additional security for the event were protected by the doctrine of discretionary function immunity because they involved the balancing of policy considerations. Lakewood had no duty to warn Rasivong of the danger of assault because this act was not foreseeable.

**Reversed.**

NORTON, Judge (dissenting in part).

I respectfully dissent from the majority's conclusion that Lakewood's failure to hire additional security for Southeast Asian Days was a policy-making decision protected by discretionary immunity.

Discretionary function immunity is the exception to the general rule of liability. *Holmquist v. State,* 425 N.W.2d 230, 231 (Minn.1988). Thus, discretionary function immunity must be construed narrowly to ensure the exception does not swallow the general rule of liability. *Id.* The burden is on the state to establish the challenged action was protected by discretionary function immunity. *Nusbaum v. County of Blue Earth,* 422 N.W.2d 713, 722 n. 6 (Minn.1988). In addition, the facts here

---

**3.** The only potential target mentioned in the rumors was the person who started the fight between the rival gangs.

must be viewed in the light most favorable to Rasivong, the non-moving party in this summary judgment action. *See Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). When the record is examined in light of the narrow construction given to the discretionary acts exception, the state's burden of proof, and the standard of review for a summary judgment, it is evident that the trial court properly concluded Lakewood's failure to hire additional security was an operational decision unprotected by discretionary act immunity.

In *District Bd. of Trustees of Miami Dade Community College v. M.H.*, 578 So.2d 8, 8 (Fla.App.3d Dist.1991), *pet. for rev. denied*, 591 So.2d 181 (Fla.1991), the court addressed a similar issue and concluded a college could be sued for negligence for providing inadequate security on its campus. The court agreed with the plaintiff that while

> a governmental entity may have discretionary authority to operate or not operate a particular facility, once the government entity decides to operate the facility there is a common law duty to operate the facility safely.

*Id.*

I find *M.H.* more persuasive than the Oregon case cited by the majority because *M.H.* and the present case both involve security on a college campus. As in *M.H.*, once Lakewood made the discretionary decision to host Southeast Asian Days, it had a duty to conduct this event safely. Lakewood's decision regarding the number of security officers necessary to safely host the event was an operational level determination made to implement the broader policy decision to host Southeast Asian Days. *See Pletan v. Gaines*, 460 N.W.2d 74, 77 (Minn.App.1990) (decision by police officer to pursue suspect in high-speed car chase was operational level decision implementing police department's "pursuit" policy of evaluating safety risks and thus not protected by discretionary immunity), *pet. for rev. denied* (Minn. Nov. 1, 1990); *Abbett v. County of St. Louis*, 424 N.W.2d 82, 85 (Minn.App.1988) (discretionary function im-

munity not applicable as failure to place guardrail was professional decision made at operational level guided by underlying policy of minimizing barriers), *pet. for rev. denied* (Minn. July 28, 1988); *see also Schaeffer v. State*, 444 N.W.2d 876, 881 (Minn.App.1989) (although material fact dispute prevented court from determining if decision was operational or planning level, court rejected argument that decision was immune merely because it was made as part of a broad policy decision to undertake construction project).

Moreover, the record shows Lakewood's failure to hire additional security was not protected by discretionary act immunity because this decision did not involve any policy balancing or even any policy consideration. *See Nusbaum*, 422 N.W.2d at 722 (in deciding whether discretionary function immunity applies, precise government conduct being challenged must be identified and examined to determine if it involved balancing of policy objectives). The present case involved security for a single event rather than a general security policy for the college. It is undisputed that both Dean Nesbitt and Lt. Pitman thought the number of officers assigned to the festival was "ridiculously low." Yet, the record shows Nesbitt simply accepted the security arrangements that Pitman offered without considering any policy factors or even making an actual decision about whether additional security was needed for the event. Absent evidence showing Lakewood reached the decision not to hire additional security for Southeast Asian Days by balancing policy considerations, the trial court correctly concluded this decision was not protected by discretionary function immunity. *See id.* at 723 (discretionary function immunity not applicable because no evidence was presented to show policy considerations were involved).