Kathy Ruth ANGELL, Appellant,

v.

HENNEPIN COUNTY, et al., Defendants,

The Hennepin County Regional Rail Authority, Respondent.

No. C6-97-75.

Court of Appeals of Minnesota.

July 8, 1997.

Review Granted Sept. 4, 1997.

John M. Steele, Minneapolis, for Appellant.

Peter A. Koller, Moss & Barnett, Minneapolis, for Respondent.

Considered and decided by LANSING, P.J., and SHORT and KLAPHAKE, JJ.

## OPINION

LANSING, Judge.

A bicyclist injured while riding on property owned by the Hennepin County Regional Railroad Authority appeals from summary judgment based on statutory immunity. The Authority seeks review of the denial of its unimproved property immunity defense. Because the Authority failed to show the challenged conduct involved planning-level decisions, we reverse summary judgment based on statutory immunity. We affirm the ruling that the Authority is not entitled to unimproved property immunity.

## FACTS

On July 16, 1995, Kathy Angell had a bicycling accident that resulted in serious injury while riding on property owned by the Hennepin County Regional Railroad Authority (HCRRA). The property is located near Cedar Lake and has dirt trails commonly used by cyclists, although they are not maintained as cycling trails. Angell was injured when she inadvertently rode off the end of a loading dock adjacent to one of the trails.

The HCRRA acquired the property in 1984 from the Chicago and Northwestern Transportation Company in anticipation of light-rail transit or other transportation use. The HCRRA demolished and removed some of the railroad company's buildings, including a building around the loading dock.

Angell sued Hennepin County, the HCRRA, the City of Minneapolis, and Minneapolis City Parks and Recreation Board alleging "negligent failure to maintain the said premises, negligent failure to warn of an ultra hazardous condition or negligent failure to erect barricades to prevent injury." After multiple motions for summary judgment, the HCRRA is the only remaining defendant. The district court granted summary judgment in favor of the HCRRA on the basis of statutory immunity, Minn.Stat. § 466.03, subd. 6 (1996), but rejected the HCRRA's assertion that it was entitled to unimproved property immunity, Minn.Stat. § 466.03, subd. 13 (1996). Angell appeals the adverse statutory immunity ruling, and the HCRRA seeks review of the unimproved property immunity ruling.

## ISSUES

I. Has the HCRRA demonstrated that the conduct challenged by Angell's claims involved planning-level decisions?

II. What constitutes "improvement" of property for purposes of unimproved property immunity, Minn.Stat. § 466.03, subd. 13?

## ANALYSIS

In an appeal from summary judgment, this court determines (1) whether there are any genuine issues of material fact, and (2) whether the lower court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The evidence is viewed in a light most favorable to the non-moving party. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). Whether an immunity defense applies is a question of law subject to independent review. *Johnson v. State*, 553 N.W.2d 40, 45 (Minn.1996). The burden is on the party asserting an immunity defense to demonstrate that it is entitled to immunity. *Rehn v. Fischley*, 557 N.W.2d 328, 333 (Minn.1997).

### I. Statutory immunity

■ A political subdivision is generally subject to liability for the torts of "its officers, employees and agents acting within the scope of their employment." Minn.Stat. § 466.02 (1996). But if a claim is "based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused," the political subdivision is immune. Minn.Stat. § 466.03, subd. 6 (1996). This immunity is referred to as statutory immunity. *See Janklow v. Minnesota Bd. of Exam'rs*, 552 N.W.2d 711, 716 (Minn.1996) (clarifying that state's "discretionary function" immunity, Minn.Stat. § 3.736, subd. 3, will be called "statutory" immunity); *Watson v. Metropolitan Transit Comm'n*, 553 N.W.2d 406, 412 (Minn.1996) (stating that municipality's "discretionary function" immunity, Minn.Stat. § 466.03, subd. 6, is known as "statutory" immunity).

The purpose of statutory immunity is rooted in the separation of powers. It is intended to prevent courts from second-guessing " 'policy-making activities that are legislative or executive in nature.' " *Watson,* 553 N.W.2d at 412 (Minn.1996) (quoting *Nusbaum v. Blue Earth County,* 422 N.W.2d 713, 718 (Minn.1988)). Because it is the exception to the general rule of governmental liability for common-law torts, statutory immunity is narrowly construed. *Cairl v. State,* 323 N.W.2d 20, 23 (Minn.1982).

For purposes of statutory immunity, the court distinguishes between "planning level" activity, which is protected by immunity, and "operational level" activity, which is not. *Watson,* 553 N.W.2d at 412. The "crucial question" in making this distinction is " 'whether the conduct involves the balancing of public policy considerations in the formulation of policy.' " *Id.* at 413 (quoting *Holmquist v. State,* 425 N.W.2d 230, 234 (Minn. 1988)). "[Statutory] immunity protects the government only when it can produce evidence its conduct was of a policy-making nature involving social, political, or economic considerations, rather than merely professional or scientific judgments." *Steinke v. City of Andover,* 525 N.W.2d 173, 175 (Minn. 1994).

The first step in deciding whether statutory immunity applies is the identification of the "precise governmental conduct in question." *Id.* The governmental conduct Angell challenges is the failure to inspect the HCRRA-owned property near Cedar Lake, the failure to warn of a hazardous condition, and the failure to erect a barricade. Our inquiry is whether that conduct resulted from the county's performance or failure to perform a discretionary function; in other words, whether the HCRRA made a planning-level decision to leave the land idle and closed to the public and therefore had no reason to survey the land for dangers.

We do not doubt that the creation of a management plan for HCRRA land involves the balancing of policies and is the type of planning-level decision that statutory immunity is intended to protect. It is not our function to review such legislative- or executive-type policymaking. *See Nusbaum,* 422 N.W.2d at 719 ("While * * * labels [i.e., 'planning' vs. 'operational'] are helpful in determining whether government action or inaction is protected under the discretionary function exception, a court should always have at the forefront the idea that the exception seeks to protect policy-based decisions and prevent the impairment of effective government."). But the HCRRA has failed to carry its burden of demonstrating that the challenged conduct resulted from a planning-level decision to leave the land idle and closed to the public. *See Rehn,* 557 N.W.2d at 333 (burden is on party asserting entitlement to immunity); *Steinke,* 525 N.W.2d at 175 (government must produce evidence showing policymaking nature of conduct).

Although the HCRRA asserts that it made a policy-level decision not to improve the Cedar Lake tract, the HCRRA Land Use Management Plan contradicts that assertion. The Management Plan, issued in February 1995, purports to provide "general guidelines that will be used by HCRRA staff to evaluate and make decisions regarding maintenance, access, use, and sale of HCRRA properties." According to the Management Plan, the Cedar Lake tract is a "linear rail corridor," and among the goals identified for the maintenance of such corridors is to "[a]llow interim recreational trail or transportation uses of the corridors until such time that LRT [light rail transit] is implemented." The Management Plan provides that access restrictions "will be installed in such cases where it is determined that such restriction will protect users of the property * * * ."

We believe the Land Use Management Plan reflects an expression of the HCRRA's planning and policy-weighing function. *Cf. Nusbaum v. Blue Earth County,* 422 N.W.2d at 723–24 (noting that Manual on Uniform Traffic Control Devices reflects policy-level decisions of transportation department and its implementation requires only professional judgment); *Abbett v. County of St. Louis,* 424 N.W.2d 82, 84–85 (Minn.App.1988) (same), *review denied* (Minn. July 28, 1988). But the Plan's identification of the Cedar Lake tract as a linear rail corridor which would allow recreational trail use is inconsis-

tent with HCRRA's claim that it made a planning decision to leave the land idle and closed to the public. At a minimum the Plan raises genuine issues of material fact about the HCRRA's planning-level decisions precluding the operation of an immunity to bar suit. *See, e.g., Rico v. State*, 472 N.W.2d 100, 107 (Minn.1991) (noting that genuine issues of material fact preclude operation of *official* immunity to bar suit); *Schaeffer v. State*, 444 N.W.2d 876, 880–81 (Minn.App.1989) (holding that genuine issues of material fact on whether decisions were operational or planning in nature precluded summary judgment based on statutory immunity).

 Governmental conduct involving professional judgment that is taken to *implement* a policy-level decision is not entitled to statutory immunity. *Steinke*, 525 N.W.2d at 175. Viewed in a light most favorable to Angell, the evidence, as expressed in the HCRRA Land Use Management Plan, suggests that the HCRRA decided to tolerate recreational use[1] of its Cedar Lake property and to use access restrictions to protect users of the property. Whether to inspect the land and place warnings or barricades to hazards are professional management decisions made in pursuit of the overall policy, and therefore statutory immunity does not bar Angell's claims. *See Nusbaum*, 422 N.W.2d at 723 (holding that failure to place speed zone sign warning of curve involved "merely a professional judgment"); *Schaeffer*, 444 N.W.2d at 880–81 (holding that genuine issues of material fact on whether guardrail placement decisions were operational or planning in nature precluded summary judgment based on statutory immunity); *Abbett*, 424 N.W.2d at 85 (holding that decision on where to install guardrail involved "professional judgment," not policymaking); *Johnson v. County of Nicollet*, 387 N.W.2d 209, 212 (Minn.App.1986) (holding that county's decision not to place guardrail on a danger-

ous road was operational because it implemented the county's policy decision to permit public use of road); *Ostendorf v. Kenyon*, 347 N.W.2d 834, 838 (Minn.App.1984) (holding that state's failure to place warning signs on dangerous road was operational decision).

## II. Unimproved property immunity

A municipality or political subdivision is not liable for "[a]ny claim based upon the condition of unimproved real property" it owns. Minn.Stat. § 466.03, subds. 6b, 13 (1996). The HCRRA contends that it is entitled to unimproved property immunity because the Cedar Lake tract where Angell was injured is unimproved. We disagree.

 Section 466.03 does not define "unimproved" for purposes of the immunity.[2] We construe words and phrases used in statutes according to their common and approved usage unless to do so would be inconsistent with the manifest intent of the legislature. Minn.Stat. § 645.08(1) (1996); *Kugling v. Williamson*, 231 Minn. 135, 139–40, 42 N.W.2d 534, 538 (1950). When the words of a law are not explicit, the court may consider "other laws upon the same or similar subjects." Minn.Stat. § 645.16(5) (1996). Courts have recognized a presumption that the legislative body uses the same term consistently in different statutes. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 254, 114 S.Ct. 2239, 2244–45, 129 L.Ed.2d 203 (1994); *Smith v. United States*, 508 U.S. 223, 233, 113 S.Ct. 2050, 2056–57, 124 L.Ed.2d 138 (1993).

 To improve means to "make better," "increase the productivity or value of," or "make beneficial additions or changes." *American Heritage Dictionary* 909 (3d ed.1992). In a separate statutory section, the legislature has stated that an "improvement" to real property includes "the erection, alteration, repair, or removal of any building,

1. The HCRRA has not asserted municipal recreational immunity under Minn.Stat. § 466.03, subd. 6e (1996), and we therefore do not address its applicability to these facts.

2. The HCRRA urges that the definition provided in subdivision 13 controls. We agree, but that definition references the term to be defined and

therefore does not aid the court's determination. Minn.Stat. § 466.03, subd. 13, states: "unimproved real property * * * means land that the municipality has not improved, * * * and appurtenances, fixture, and attachments to land that the municipality has neither affixed nor improved."

fixture * * * or other structure." Minn.Stat. § 514.01 (1996) (providing for laborer's lien upon improvements); *see also Kloster–Madsen, Inc. v. Tafi's, Inc.,* 303 Minn. 59, 226 N.W.2d 603, 607 (1975) (stating section 514.01 "makes any contribution to real property of labor, skill, material, or machinery for any purpose specified, which includes the alteration of any building, an improvement").

It is undisputed that the HCRRA removed old structures from the Cedar Lake tract after it was purchased from the railway company. The evidence suggests that one of the demolished structures was attached to the loading dock where Angell was injured. We hold that the demolition and removal of old structures constituted an improvement to the Cedar Lake tract, and thus, the HCRRA is not entitled to unimproved property immunity.

### DECISION

We reverse summary judgment based on statutory immunity because the HCRRA failed to demonstrate that the conduct challenged by Angell's claims involved planning-level decisions. Because the HCRRA improved its property through demolition and removal of old structures, we affirm the district court ruling that it is not entitled to unimproved property immunity.

**Affirmed in part, reversed in part, and remanded.**

SHORT, Judge (dissenting).

I respectfully dissent. The HCRRA decided to leave the loading dock in place only after weighing the governmental interest in the efficient allocation of staff and financial resources with the competing concerns of the local municipalities and local residents impacted by the decision. *Cf. Steinke v. City of Andover,* 525 N.W.2d 173, 176 (Minn.1994) (affording protection of immunity where county balanced political, social, and economic considerations in deciding to post traffic warning signs only at certain rights-of-way); *Gutbrod v. County of Hennepin,* 529 N.W.2d 720, 723 (Minn.App.1995) (granting immunity to government employee's decision, based on consideration of risks and costs, not to repair immediately crack in road). The HCRRA's discretionary decision is precisely the type of municipal act protected by statutory immunity. *See* Minn.Stat. § 466.03, subd. 6 (1996) (providing immunity from liability for performance of discretionary functions); *see also Waste Recovery Co-op. v. County of Hennepin,* 517 N.W.2d 329, 332 (Minn.1994) (recognizing statutory immunity is intended to prevent courts from passing judgment on "policy decisions entrusted to coordinate branches of government") (citation omitted). The trial court properly granted summary judgment in favor of HCRRA, and I would affirm.